UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :

MIGDAL INSURANCE COMPANY, LTD.,   :

                                      Plaintiff,    :         14-CV-700 (JPO)

              -v-                       :         OPINION AND ORDER

THE INSURANCE COMPANY OF THE STATE :
OF PENNSYLVANIA and NATIONAL UNION  :
FIRE INSURANCE COMPANY OF              :
PITTSBURGH PENNSYLVANIA,              :

                                  Defendants.  :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

       Plaintiff Migdal Insurance Company, Ltd. ("Migdal") brings this action against Defendants The Insurance Company of the State of Pennsylvania ("ICSOP") and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), for equitable contribution and equitable subrogation. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, their motion is granted in part and denied in part.

**I.      Background**[1]

       Migdal, ICSOP, and National Union each wrote insurance policies covering Kinetics Group ("Kinetics"), a worldwide construction firm headquartered in Santa Clara, California. Migdal's policy and ICSOP's policy had two million dollar loss limits; National Union's policy

---

[1] The following facts are drawn from Migdal's complaint and are taken as true for the purposes of this motion. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990).

had a fifty million dollar loss limit excess to[2] the prior two policies. The complaint does not speak to the relationship between the Migdal policy and the ICSOP policy.

While working on a construction project in Israel, a Kinetics employee damaged equipment owned by Tower, Inc., an Israeli company. Tower's loss was repaid by its insurer, which then stood in Tower's shoes and sued Kinetics in the District Court for Tel-Aviv/Yafo, Israel. Migdal, pursuant to the policy it had with Kinetics, stepped in to defend the action. Migdal attempted to implead ICSOP and National Union in the Israeli action, but they refused to appear because they were not subject to the jurisdiction of the Israeli court. Migdal paid $1.75 million, in February of 2011, to settle the Israeli action and incurred costs totaling approximately 216,000 New Israeli Shekels (around $60,000) defending the Israeli action. On February 3, 2014, Migdal brought this action seeking equitable contribution and subrogation from ICSOP and National Union.

## II.     Contribution

Defendants move to dismiss Migdal's claim for equitable contribution under Federal Rule of Civil Procedure 12(b)(6), arguing that California's two-year statute of limitations bars the equitable contribution claim because Migdal waited until February of 2014 to file it.[3] Migdal responds by arguing that New York's six-year statute of limitations applies and, therefore, its claim is timely. The parties do not dispute the facts with respect to the applicable statute of limitations. The question, then, is which statute of limitations applies to a dispute in equity, filed

---

[2] This means that ICSOP would not pay until Kinetic's claims had exceeded the two million dollar limit under its policy with Migdal.

[3] For purposes of the motion to dismiss, Defendants do not contest the merits of the contribution claim. Rather, they note that "in the event the equitable contribution claims are not time barred, ICSOP and National Union intend to move for summary judgment dismissing the complaint on the ground that as a matter of law there is no right to equitable contribution between primary and excess carriers." (Dkt. No. 18, Defendant's Memorandum of Law in Support of its Motion to Dismiss, at 13 n.4 ["hereinafter: Defendant's Memorandum"].)

in federal court in New York, between an Israeli company and two New York-based (and Pennsylvania-incorporated) companies, arising from claims paid in Israel on policies written to a California-based (and Delaware-incorporated) worldwide construction firm.

In diversity cases, this Court applies the choice-of-law rules of the state in which it sits: New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945). The *Klaxon* rule serves both to respect the prerogative of the states to determine the rules governing actions filed within their borders and to deter plaintiffs from shopping for a favorable forum by taking their state-law claims across the street to federal court. *See Klaxon*, 313 U.S. at 496 ("Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side."); *In re Coudert Bros. LLP*, 673 F.3d 180, 189 (2d Cir. 2012) ("*Klaxon* echoes *Erie's* hostility toward intra-state forum shopping. By requiring federal courts to treat a claim exactly the same as would the courts of the state in which they sit, *Klaxon* ensures that a plaintiff's choice of forum within a given state will not be influenced by choice of law considerations.").

New York courts generally apply a "grouping of contacts" or "center of gravity" approach to choice-of-law problems in contribution cases. *See, e.g.*, *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994). This approach, in essence, asks which jurisdiction has the greatest interest in the contract at issue. When deciding which law governs an insurance policy for global risk, New York courts generally look to the domicile of the insured—which, the courts reason, is a "proxy for the principal location of the insured risk" where that risk does not lie in a single state. *See Certain Underwriters at Lloyd's v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 33-35 (App. Div. 1st Dep't 2006), *aff'd*, 9 N.Y.3d 928 (2007).

So, Defendants argue in their opening brief,[4] California law governs this dispute because the insured—Kinetics—is a California company.

But New York choice-of-law rules contain an exception for statutes of limitations. While New York courts generally apply the "grouping of contacts" approach to choice-of-law disputes in contracts cases, they look only to the place where the claim "accrued" in deciding which statute of limitations to apply. *See Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999); N.Y. C.P.L.R. § 202. This (perhaps unusual) result stems from the interaction of New York's evolving common law rules and its stable statutes. In 1902, New York enacted a predecessor to its current "borrowing statute," now codified at Civil Practice Law and Rules ("CPLR") section 202.[5] *Antone v. Gen. Motors Corp.*, 64 N.Y.2d 20, 27 (1984). In cases where the cause of action sued upon accrued outside the state in favor of a nonresident of New York, the borrowing statute applies the shorter of New York's limitations period and that of the jurisdiction in which the claim accrued. By mid-century, the New York Court of Appeals had abandoned the traditional territorial approach to choice-of-law problems, which in contract cases applied the law of the jurisdiction where the contract was made or performed, in favor of the more flexible interest analysis, which applies the law of the jurisdiction with the strongest interest in the conflicting issues presented in the case. *See Babcock v. Jackson*, 12 N.Y.2d 473,

---

[4] Defendants abandon this argument in their reply.

[5] The borrowing statute reads, in full:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. § 202.

479 (1963). But the borrowing statute remains essentially as it was in 1902. *See Global*, 93 N.Y.2d at 528 ("CPLR 202 has remained substantially unchanged since 1902 . . . ."). Thus, while New York courts have abandoned territoriality in most other choice-of-law decisions, they take a purely territorial approach to statutes of limitations. They ask only where the action accrued.

A cause of action "accru[es]" for purposes of CPLR § 202 wherever "the plaintiff first had the right to bring the cause of action." *Global*, 93 N.Y.2d at 528. Under the rule set out in *Lloyd's*, the cause of action in this case is governed by California substantive law. *See* 822 N.Y.S.2d at 35. A claim for contribution under California law accrues when (and where) a judgment is paid. *E.g.*, *Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal. App. 4th 1063, 1078 (2d Dist. 1999) ("In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1st Dist. 1993))). Migdal paid the judgment in Israel. Nonetheless, Defendants argue that one does not have a "right to bring the cause of action" where, as here, the plaintiff cannot obtain personal jurisdiction over the defendants. Unfortunately for Defendants, that is not how New York courts see it. *See Ins. Co. of N. Am. v. ABB Power Generation, Inc.*, 91 N.Y.2d 180, 188 (1997) ("It matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction or that the parties have contracted to be venued in this State."). Thus, the cause of action accrued in Israel. In Israel, the statute of limitations for this type of claim is seven years. (*See* Dkt. No. 19, Declaration of Reuven Klein, at ¶ 2.) New York law would apply its own statute of limitations: six years. Migdal's claims are timely.

Perhaps sensing that Migdal might have the better of the choice-of-law argument, Defendants offer two new arguments in their reply brief. First, they note that the New York Court of Appeals has never applied the rule of *Global*—that courts must look to the place of accrual, rather than the general conflicts-of-law analysis, to determine the applicable statute of limitations—to claims for equitable contribution. Second, they argue that applying New York's statute of limitations contravenes the purpose of New York's borrowing statute.

The first argument is unpersuasive. The Court of Appeals has made clear that a claim "accrues at the time and in the place of the injury," and when the loss sued upon is purely economic, the claim arises in the place where that loss is suffered—ordinarily the plaintiff's domicile. *Global*, 93 N.Y.2d at 529. There is no indication that this general rule should not apply here.

With their second argument, though, Defendants have a point. The result in this case is anomalous. Both *Klaxon* and the borrowing statute serve to prevent forum shopping. And yet, had Migdal sued in, say, California, its action might have been time-barred. Even though California has a borrowing statute, its courts apply interest analysis to statute-of-limitations questions. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 86-87 (2010) (citing Cal. Civ. Proc. Code § 361). And that analysis would likely point to California law (and its two-year statute of limitations) in this case. Only by suing in New York, then, could Migdal avail itself of New York's statute of limitations. This is what the borrowing statute is intended to prevent.

But Defendants' point cannot prevail. There are, after all, two purposes to the rule in *Klaxon*, the first of which is to respect New York's ability to create its own choice-of-law rules and to trust that those rules will be applied consistently within its borders. The rule in this case is clear, and this Court applies it. Defendants' motion to dismiss Migdal's equitable contribution claim is denied.

**III.     Subrogation**

Defendants also argue that Migdal has failed to state a claim for equitable subrogation. To survive a motion to dismiss for failure to state a claim, plaintiffs must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when plaintiffs plead facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept as true all well-pleaded factual allegations in the complaint, and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Migdal styles its complaint as one for "equitable contribution/subrogation." (Dkt. No. 2, Complaint, at ¶ 32-33.) Under California law (which governs the substance of this action), equitable contribution and equitable subrogation are different theories of recovery. *See Md. Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal. App. 4th 1082, 1088-89 (4th Dist. 2000). "Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss . . . . [T]he moving party insurer must show the other insurer was *primarily* liable for the loss and that the moving party's equitable position is *inferior* to that of the second insurer." *Id.* at 1088; *Transcon. Ins. Co. v. Ins. Co. of State of Pennsylvania*, 148 Cal. App. 4th 1296, 1303 (4th Dist. 2007) (citing *id.*). Equitable contribution, on the other hand, "applies to apportion costs among insurers that share the same level of liability on the same risk as to the same insured."

*Md. Cas.*, 81 Cal. App. 4th at 1089.  Plaintiffs in actions of the latter type need only show that the defendant properly owes *some* share of the payments.

Defendants argue that Migdal's equitable subrogation claim must be dismissed because it has failed to plead most of the elements of that claim under California law.  Those elements are:

> (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund*, 65 Cal. App. 4th at 1292.  Defendants argue that Migdal has failed to plead elements (a), (b), (c), (e), (f), and (g).  The Court need not analyze each of these arguments because it concludes that Migdal has failed to plead element (b).

In its complaint, Migdal does not allege that the ICSOP policy is excess to the Migdal policy.  But neither does it allege that ICSOP or National Union is primarily responsible for the losses suffered by Tower.  This is a necessary element of the claim of subrogation, so at least as pleaded, this claim cannot succeed.  Migdal's equitable subrogation claim is therefore dismissed, but Migdal is granted leave to amend its complaint should it desire to do so.  *See* Fed. R. Civ. P. 15(a)(2); *see also Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) ("[L]eave to amend should be freely granted . . . .").

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss Migdal's equitable contribution claim is DENIED and Defendants' motion to dismiss Migdal's equitable subrogation claim is GRANTED.  Migdal is granted leave to amend its complaint provided that it does so within 21 days of the date of this order.  The Clerk of the Court is directed to close the motion at docket number 16.

SO ORDERED.


Dated: October 14, 2014
   New York, New York

_____
J. PAUL OETKEN
United States District Judge