UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                               :

MIGDAL INSURANCE COMPANY, LTD.,    :

                          Plaintiff,    :

                                 :             14-CV-700 (JPO)

          -v-              :

                                 :      OPINION AND ORDER

THE INSURANCE COMPANY OF THE STATE:
OF PENNSYLVANIA and NATIONAL UNION :
FIRE INSURANCE COMPANY OF          :
PITTSBURGH PENNSYLVANIA,         :

                        Defendants. :

---------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

Plaintiff Migdal Insurance Company, Ltd. ("Migdal"), brings this action against Defendant the Insurance Company of the State of Pennsylvania ("ICSOP"), for equitable contribution.[1] ICSOP counterclaims for a declaration that it is not liable for contribution. Both parties move for summary judgment under Federal Rule of Civil Procedure 56. For the reasons that follow, Migdal's motion is granted and ICSOP's motion is denied.

## I.    Background

Migdal wrote a general commercial liability insurance policy covering Kinetics Israel, Ltd. ("Kinetics Israel"), an Israeli engineering concern. ICSOP wrote a global-risk policy covering Kinetics, Inc. ("Kinetics"), the California-based company that owns Kinetics Israel. Both policy documents address the possibility that the insured carried other insurance. Migdal's policy reads:

> It is agreed that the cover under this policy constitutes primary cover and will apply before any similar cover which has been arranged by the insured under

---

[1] The Court dismissed Migdal's claim for equitable subrogation. (Dkt. No. 31.) National Union Fire Insurance Company of Pittsburgh Pennsylvania has been dismissed from the action. (Dkt. No. 54.)

> the Third Party Liability section of the policy in any other property and
> liability insurance arranged by the insured.

(Dkt. No. 50, Declaration of Andrew N. Bourne, Ex. 1. ["Migdal Policy"], at 20.)[2]  ICSOP's

policy—which is reproduced in full as an appendix to this Opinion—states that its insurance is

primary unless certain exceptions apply.  (Appendix A, at 13; *see also* Dkt. No. 46, ICSOP's

Memorandum of Law in Support of its Motion for Summary Judgment ["ICSOP Support"], at

3.)[3]  The issue in this case is whether those exceptions apply.

In May 2004, employees of Kinetics Israel accidentally damaged equipment owned by

Tower, Inc., another Israeli company.  Migdal defended Kinetics Israel in the resulting Israeli

lawsuit, and ultimately settled the action for $1.75 million and incurred 216,951 New Israeli

Shekels (around $56,000) in defense costs.  ICSOP did not participate in the Israeli action.  In

2014, Migdal brought this suit seeking contribution from ICSOP.  The parties agree that the

Tower, Inc., accident is covered by both policies and that Migdal's insurance is primary.  The

primary question is whether ICSOP's policy is "excess" (meaning it does not pay until Kinetics,

Inc.'s other insurance is exhausted), or "primary" (meaning it pays regardless).

## II.     Discussion

Migdal moves for summary judgment that it is entitled to contribution because ICSOP's

policy is not excess to Migdal's; ICSOP moves for summary judgment that its policy is excess to

Migdal's.  ICSOP also argues that Migdal is not entitled to summary judgment on the issue of

damages.  The Court discusses the legal standard governing the motions; briefly addresses the

---

[2] The policy has been translated from its original Hebrew.  Neither party challenges the accuracy
of the translation.

[3] Each party has filed three memoranda of law on the pending motions.  For convenience, the
Court refers to each memorandum as the Support, Opposition, or Reply memorandum of each
party.

choice-of-law issue; analyzes the summary judgment motions regarding contribution; and, finally, discusses the summary judgment motion regarding damages.

### A.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The initial burden of a movant on summary judgment is to provide evidence on each element of her claim or defense illustrating her entitlement to relief.  *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant meets this initial burden of production, the non-moving party must then identify specific facts demonstrating a genuine issue for trial.  The court views all evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in its favor."  *Anderson*, 447 U.S. at 250–51.  A motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).  But the non-moving party cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden.  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing, *inter alia*, *Matsushita*, 475 U.S. at 587).

### B.    Choice of Law Revisited

For the reasons explained in the Court's opinion denying ICSOP's motion to dismiss, California law governs this dispute.  *See Migdal Ins. Co. v. Ins. Co. of Pennsylvania*, No. 14 Civ. 700 (JPO), 2014 WL 5149128, at *2 (S.D.N.Y. Oct. 14, 2014).  Nonetheless, Migdal contends

that the Court need not actually decide whether California or New York law governs this dispute because "there are no conflicts between the laws of New York and California regarding the issues of equitable contribution raised by this action." (Migdal Support, at 11.)  As will become clearer later on, California's rule—such as it is—does appear to differ significantly from New York's.  *Compare, e.g.*, *Liberty Mut. Ins. Co. v. Hartford Ins. Co. of Midwest*, 25 A.D.3d 658, 662 (N.Y. App. Div. 2d Dep't 2006) (quoting *State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 375–376 (1985)), *with, e.g.*, *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1306 (1st Dist. 1998) (quoting *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* 45 Cal. App. 4th 1, 52 (1st Dist. 1996)).  Therefore, because this case involves the interpretation of an insurance policy covering global risk, this Court applies the law of the insured's domicile: California.  *See Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 24 (N.Y. App. Div. 1st Dep't 2006), *aff'd*, 9 N.Y.3d 928 (2007).[4]

## C.     Contribution

Equitable contribution[5] claims arise when two insurers cover the same loss, but only one of them pays for it.  The general principle is that when an insured has two insurers, her ordinarily

---

[4] The *principal* issues in this case require the Court to consider the ICSOP policy, which covers the global risk of a California-based business and, therefore, falls within the rule that "where it is necessary to determine the law governing a liability insurance policy covering risks in multiple states, the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk." *Certain Underwriters at Lloyd's, London*, 36 A.D.3d at 24.  The Migdal policy, though, covers only Israeli risk.  But the Court need not consider Israeli law because this case can be resolved by considering the meaning of only the ICSOP policy.

[5] "It is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, contribution, co-obligation and joint tortfeasorship.  Perhaps because the words describe legal relationships between multiple parties, they are vaguely reminiscent of complex mathematical equations which, after all, also describe relationships, except in numbers rather than words—and for most of us, they are about as easy to understand.  Even lawyers find words like 'indemnity' and 'subrogation' ring of an obscure Martian dialect." *Herrick Corp. v. Canadian Ins. Co.*, 29 Cal. App. 4th 753, 756 (4th Dist. 1994), *as modified on denial of reh'g* (Nov. 28, 1994).

fortuitous choice of whom to approach for payment should not determine who ultimately pays. But insurance companies, knowing this possibility, often include mutually irreconcilable "other insurance" clauses in their policies. *CSE Ins. Grp. v. Northbrook Prop. & Cas. Co.*, 23 Cal. App. 4th 1839, 1842 (2d Dist. 1994). As the cases cited in the margin below demonstrate, reconciling these irreconcilable clauses has been a "recurring task" of the California Court of Appeal, *id.*; reconciling the cases that reconcile the clauses—the task of this Court—is impossible, *id.* at 1843 ("'Excess-only' provisions have often collided with 'proration' provisions, with results that cannot be harmonized.").[6]

---

[6] For a sample of these cases, see *CSE Ins. Grp.*, 23 Cal. App. At 1843–44 ("*Pacific Employers Ins. Co. v. Maryland Casualty Co.*, 65 Cal. 2d 318, 328–329 (1966), *disapproved on another point in Herzog v. National American Ins. Co.*, 2 Cal. 3d 192 (1970) (two policies provided for proration and a third said it was excess only; held, the two policies prorate, and the third is excess only); *Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.*, 211 Cal. App. 3d 1285, 1302 (5th Dist. 1989) (one umbrella policy said it was excess only but would prorate, second umbrella policy said it was excess only; held, the two policies must prorate); *Employers Reinsurance Corp. v. Phoenix Ins. Co.*, 186 Cal. App. 3d 545, 556–559 (1st Dist. 1986) (one policy said excess only, two other policies said excess only but will prorate; held, all three must prorate); *Employers Reinsurance Corp. v. Mission Equities Corp.*, 74 Cal. App. 3d 826 (1st Dist. 1977) (one policy said excess only, second policy said 'escape' (no coverage if other insurance exists); held, second policy must be exhausted before resort to the first, adding, in dictum, that a proration policy must be exhausted before resort to an excess policy); *Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co.*, 33 Cal. App. 3d 26, 34 (3d Dist. 1973) (one policy said prorate, second policy implied it was excess; held, first policy must be exhausted before resort to the second); *Truck Ins. Exchange v. Interinsurance Exchange*, 33 Cal. App. 3d 984, 988–989 (2d Dist. 1973) (in dictum, a prorated policy must be exhausted before resort to an excess policy); *Owens Pacific Marine, Inc. v. Insurance Co. of North America*, 12 Cal. App. 3d 661, 668–669 (2d Dist. 1970) (one policy said prorate, second policy said excess; held, the policies do not prorate, and the first policy must be exhausted before resort to the second); *Donahue Constr. Co. v. Transport Indem. Co.*, 7 Cal. App. 3d 291, 301–303 (1st Dist. 1970) (same); *Firemen's Fund etc. Ins. Companies v. State Farm etc. Ins. Co.*, 273 Cal. App. 2d 445 (2d Dist. 1969) (one policy said prorate, second policy said excess, adding an escape provision of no practical applicability in the particular case; held, the policies do not prorate, and the first policy must be exhausted before resort to the second); *Peerless Cas. Co. v. Continental Cas. Co.*, 144 Cal. App. 2d 617, 619–623 (1st Dist. 1956) (one policy said prorate, second policy said excess, adding a 'more or less camouflaged' escape provision of full applicability in the particular case; held, the policies must prorate); *Air etc. Co. v. Employers' Liab. etc. Corp.*, 91 Cal. App. 2d 129 (2d Dist. 1949), *disapproved on another point in Continental Cas. Co. v. Phoenix Constr. Co.* 46 Cal. 2d 423, 429 (1956) (one policy said prorate, second policy clearly

Broadly speaking, "other insurance" clauses fall into three categories.  "One subcategory is known as 'pro rata' provisions, which look to limit the insurer's liability to the total proportion that its policy limits bear to the total coverage available to the insured."  *Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App. 4th 739, 744 (1st Dist. 1999) (internal quotation marks omitted).  Next are "'excess only' clauses, which require the exhaustion of other insurance" before any payments are available on the excess policy.  *Id.*  Finally, "'escape' clauses extinguish[] the insurer's liability if the loss is covered by other insurance."  *Id*; *see also Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 598 (1st Dist. 1981).

The California Supreme Court has "expressly decline[d] to formulate a definitive rule" for determining whether one insurance policy is excess to another.  *Signal Companies, Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 369 (1980).  Instead, courts must weigh the "varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers."  *Id.*  Although California courts generally honor the terms of a policy agreement where possible, *e.g.*, *Fireman's Fund*, 65 Cal. App. 4th at 1304, there are many exceptions to this rule, *id.*, and, as such, "the modern trend is to require equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies."  *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1080 (2002).

But that "trend" is not an immutable rule.  *See id.* (declining to decide "[w]hether or not the above rule is universally applicable.").  Instead, in the absence of a strict rule from the

---

said escape to an extent fully applicable in the particular case; held, the policies must prorate)." (citation format altered).).

6

California Supreme Court, the California Court of Appeal, in recent decisions, appears strictly to honor policy language only where that language renders the policy excess in certain, defined circumstances, and only where that language clearly provides that the insurance is excess. *E.g.*, *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 110 Cal. App. 4th 710, 726 (1st Dist. 2003). The policy language is ineffective where it simply says something to the effect of "this insurance is excess over any other insurance you may have." *See, e.g.*, *Fireman's Fund*, 65 Cal. App. 4th at 1304.

Comparing *Hartford* with *Fireman's Fund*, a general principle emerges: policies are considered "excess" only when they declare themselves to be excess over specific other policies. California courts are suspicious of excess-only clauses because those clauses are similar to escape clauses, of which the California courts are exceedingly suspicious. *Compare Hartford*, 110 Cal. App. 4th at 726 ("Both policies declare themselves to be excess in the situation where the parties and the insurers are most likely to intend that result—when the insured is covered as an additional insured on another party's policy for some specific event or situation. A clause that carves out this intended exception to primary coverage is not similar to an escape clause, where the insurer appears to offer coverage that in fact evaporates in the presence of other insurance."), *with Dart Indus.*, 28 Cal. 4th at 1080 ("[P]ublic policy disfavors escape clauses, whereby coverage purports to evaporate in the presence of other insurance. This disfavor should also apply, to a lesser extent, to excess-only clauses, by which carriers seek exculpation whenever the loss falls within another carrier's policy limit." (internal quotation marks and citations omitted)). Thus, where a policy is written in a manner suggesting that the insurer and the insured intended it to be excess coverage for a specific situation, courts will interpret it as such; where it appears as though the insurer included *pro forma* excess-only language, courts will disregard that language. *See also Century Sur. Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246, 1255 (2d Dist. 2003),

*as modified* (June 25, 2003) ("'[E]xcess' insurance . . . is that secondary insurance which provides coverage after other *identified* insurance is no longer on the risk.  The identification of the underlying primary insurance may be as to (1) a particular policy or policies that are specifically described or (2) underlying coverage provided by a particular and specifically described insurer.  In short, excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage.") (citing *Wells Fargo Bank v. California Ins. Guarantee Assn.*, 38 Cal. App. 4th 936, 940 (1st Dist. 1995)) (certain emphasis omitted).

ICSOP contends that its policy is excess to Migdal's because of two provisions in ICSOP's policy: subsection (b)(3), and a clause that ICSOP labels "the exhaustion clause."  (*See generally* ICSOP Support.)  Subsection (b)(3) provides that the ICSOP insurance is "excess over . . . [a]ny other insurance or your self-insurance plan that that [*sic*] covers a loss on the same basis."  (*See* Appendix A, at 13.)  The parties dispute what this clause means; Migdal argues that it refers only to self-insurance plans, while ICSOP contends that it covers insurance like Migdal's.  Even on ICSOP's reading, however, the California Court of Appeal would not interpret subsection (b)(3) to make ICSOP's policy excess over Migdal's because, unlike the clause in *Hartford*, (b)(3) does not reference any other specific insurance over which, or any other specific situation in which, it might be excess.  Thus, even assuming that ICSOP's reading of the clause is correct, the California Court of Appeal would not enforce it against Migdal.

The context in which subsection (b)(3) appears supports this conclusion.  *Cf. Hartford*, 110 Cal. App. 4th at 726.  According to ICSOP, (b)(3) renders ICSOP's policy excess to "[a]*ny* other insurance . . . ."  (Appendix A, at 13 (emphasis added).)  But ICSOP concedes that subsections (b)(1) and (b)(2) exempt *specific* types of other insurance.  Thus, reading (b)(3) as

ICSOP prefers would render (b)(1) and (b)(2) superfluous.  In response, ICSOP argues that (b)(3) is not superfluous because Migdal's policy falls into (b)(3) but does not fall into (b)(1) or (b)(2).  (*See* Migdal Opposition, at 12.)  This argument rests on a mistaken negation.  *See, e.g.*, Steve Schwartz, *Conditional Reasoning: Contrapositive, Mistaken Reversal, Mistaken Negation*, LSAT Blog, April 10, 2009, *available at* http://lsatblog.blogspot.com/2009/04/conditional-reasoning-contrapositive.html.  Migdal's policy can fall within (b)(3) but without (b)(1) and (b)(2), even though (b)(3) *contains* (b)(1) and (b)(2), which are, therefore, superfluous.  All beagles are dogs; not all dogs are beagles.  ICSOP cannot point to a Chihuahua to prove that an insurance policy exempting both dogs and beagles is not superfluous.

ICSOP's logical error, though, does not show that its reading of the policy is wrong.  But only two possibilities remain.  Either subsection (b)(3) covers all other insurance and the Court of Appeal would not enforce it for the reasons discussed above, or (b)(3) is unclear—or, for that matter, does not cover the Migdal policy—and the Court of Appeal would not enforce it for that reason.

Regardless, this Court's ultimate task is to interpret the holdings of California's *highest* court.  *See MindGames, Inc. v. Western Pub. Co.*, 218 F.3d 652, 655–56 (7th Cir. 2000) (Posner, J.) ("The rule is that in a case in federal court in which state law provides the rule of decision, the federal court must predict how the state's highest court would decide the case, and decide it the same way."); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005) (holding that "[i]n the absence of any contrary . . . authority or other persuasive data establishing that the highest court of the state would decide otherwise," a federal court must "follow the state law decisions of state intermediate appellate courts" (quoting *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445–46 (2d Cir. 1993)) (internal quotation marks and brackets omitted)).  The holdings of the California Court of Appeal provide only persuasive evidence of

what the California Supreme Court would do.  And the last word from the California Supreme

Court on the subject is that "the modern trend is to require equitable contributions on a pro rata

basis from all primary insurers *regardless* of the type of 'other insurance' clause in their

policies." *Dart Indus.*, 28 Cal. 4th at 1080 (emphasis added).  Thus, the Court concludes that the

California Supreme Court would not interpret subsection (b)(3) to render the ICSOP policy

excess to the Migdal policy.[7]

Next, ICSOP argues that the exhaustion clause relieves it of liability in this case.  The

exhaustion clause reads: "[a]ll payments made under any local policy issued to you by us or any

other insurance company will reduce the Limits of Insurance of this policy."  (ICSOP Support, at

11.)  Migdal contends that the definition of "local underlying policy" found elsewhere in

ICSOP's document excludes the Migdal policy.  (Migdal Reply, at 13).  Although Migdal is

correct that the definition of "local *underlying* policy" would not include the Migdal policy,[8] that

does not mean that Migdal's policy is not a "local" policy.  Nonetheless, even assuming ICSOP

is correct that Migdal's policy is covered by the exhaustion clause, there is no reason to believe

---

[7] Because the California Supreme Court has not interpreted the clause at issue in this case, and because the court's jurisprudence has been somewhat uncertain on questions of equitable contribution, *e.g.*, *Signal Companies*, 27 Cal. 3d at 369, this Court would consider certifying the question.  But the California Supreme Court cannot accept a certified question from this Court. *See* Cal. R. Ct. 8.548 ("On request of the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth, the [California] Supreme Court may decide a question of California law.").

[8] While on the subject of this particular definition, the Court notes that the "maintenance of underlying insurance" provision in the ICSOP policy—which provides that Kinetics must maintain coverage for those policies that have "been issued at our [ICSOP's] direction or coordinated by us specifically for this insurance program"—strongly suggests that ICSOP did *not* consider its insurance excess to the Migdal policy.  *Contra Century Sur. Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th at 1255.  If ICSOP had considered its insurance excess to Migdal's, it would have explicitly included the Migdal policy in this provision.  The fact that ICSOP now attempts to make a distinction between "local underlying policies," which do not include Migdal's, and "local polic[ies]," which do include Migdal's, is therefore puzzling.

that the result sought by Migdal is inconsistent with that clause.  Indeed, the presence of

Migdal's policy has "reduce[d]" the "[l]imits" of the ICSOP policy by roughly 50%.  This clause

does not relieve ICSOP of *all* its liability.  Instead it is, at best, a pro-rata clause requiring ICSOP

to share liability with other insurers of the same risk.

#### D.        ICSOP's Fair Share

Finally, ICSOP contends that summary judgment cannot be granted because it is unclear

whether the Israeli settlement resolved only Tower, Inc.'s claims against Migdal or resolved

other liabilities as well.  The settlement agreement purports to resolve the "claim" at issue in that

suit, which is defined as the "Statement of Claim (C.F. 1527/08) against Defendants in the

District Court of Tel Aviv."  (ICSOP Support, at 12.)  "Defendants" in that action referred to

both Kinetics Israel *and* Migdal.  Thus, ICSOP contends, there is no way of knowing how much

of the settlement payment was meant to extinguish Kinetics Israel's liability (which would be

covered by the ICSOP policy) and how much was meant to extinguish Migdal's own liability as

Tower's *first party* insurer (which would not be covered).  Similarly, ICSOP contends that there

is no way of knowing what portion of Migdal's attorney's fees in the Israeli action were

attributable to its own liability to Tower.  Migdal, on the other hand, contends that the settlement

was intended to resolve only Migdal's derivative liability and that all attorney's fees were

devoted to that liability only.

The Court is persuaded that these disputes are not genuine.  At oral argument on these

motions, ICSOP conceded that Migdal has put forth evidence to support its claim that the whole

settlement amount was meant to resolve covered claims.  (*See, e.g.*, Dkt. No. 47-8, at 2.)  ICSOP,

in turn, produced only the Israeli complaint to support its contention that part of the settlement

could have been intended to settle non-covered claims.  (*E.g.*, ICSOP Support, at 12.)  But it

could not identify any basis for a reasonable juror to believe that Migdal *had* any independent

liability to Tower under their first-party insurance contract, or that any portion of the settlement amount was in fact for anything other than the (covered) negligence of Kinetics Israel, which was the basis for the litigation.  Therefore, no reasonable juror could conclude that Migdal paid anything in order to settle any non-derivative claim against it.  For the same reason, then, no reasonable juror could conclude that any portion of the attorney's fees Migdal paid in the Israeli action were devoted to the defense of these claims.[9]

ICSOP's fair share, then, is half of the settlement amount ($875,000) plus half of the attorney's fees (108,475.50 New Israeli Shekels[10]).

## III.  Conclusion

For the foregoing reasons, Migdal's motion for summary judgment is GRANTED and ICSOP's motion for summary judgment is DENIED.  Counsel for Migdal shall submit a proposed judgment within 14 days.

---

[9] ICSOP contends that the declarations of Migdal's Israeli counsel are inadmissible because they are not based on personal knowledge.  But Migdal need only show that it could provide admissible evidence to support its claims.  It has clearly done so.

[10] Although neither party addresses the question of the exchange rate, the Court notes that judgment should issue in New Israeli Shekels and be converted into dollars on the day the judgment issues.  *Compare Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 867 (2d Cir. 1981) (holding that in diversity cases "we are bound to apply" New York's rule), *with* N.Y. Judiciary L. § 27 ("In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation.  Such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree.").

The Clerk of the Court is directed to close the motions at docket numbers 45 and 49.

SO ORDERED.


Dated: June 25, 2015
       New York, New York

_____
        J. PAUL OETKEN
     United States District Judge

**Appendix A**

# COMMON POLICY DECLARATIONS

| | | | |
|---|---|---|---|
| **POLICY NO.:** | 80-0264926 | **MEMBERS OF THE** | **PRODUCER:** |
| | | **AMERICAN INTERNATIONAL GROUP, INC.** | Marsh Risk & Insurance Services |
| **RENEWAL OF:** | 80-0264887 | **EXECUTIVE OFFICES** | Three Embarcadero Center |
| | | **NEW YORK, N.Y.  10270** | San Francisco, California 94111 |
| | | **(212) 770-7000** | |

1. NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH

2. AMERICAN HOME ASSURANCE COMPANY

3. THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA

$\boxed{3}$  COVERAGE IS PROVIDED IN THE COMPANY
DESIGNATED BY NUMBER

A STOCK INSURANCE COMPANY
(HEREIN CALLED THE COMPANY)

**NAMED INSURED:**  Kinetic Systems, Inc

**MAILING ADDRESS:**  2805 Mission College Boulevard
Santa Clara, California 95054

**POLICY PERIOD:**  From:  August 30, 2003  To:  August 30, 2004
At 12:01 A.M., Standard Time at your mailing address shown above

**BUSINESS DESCRIPTION:**  A provider of high purity and validated process piping systems for the
semiconductor, biotechnology, and pharmaceutical industries

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT

| | PREMIUM |
|---|---|
| Foreign Commercial Auto Coverage Part | $10,000.00 |
| Foreign Commercial General Liability Coverage Part | $104,763.00 |
| **TOTAL** | $114,763.00 |

Premium shown is payable:  $114,763.00 at inception.

Forms applicable to all Coverage Parts:  77880, 77881, 77882, 78967, 78970, 78972, 78974, 78977,
78979, 78990, 78996, 79007, 79038, 79040, 79048, 79056, 79075, 79121, 80971, 80976, 80986,
and Endorsement No. 01.

**COUNTERSIGNED**  09/23/2003 SH/ER/LAE(SF2003)          **BY** _Stephen Nasbe_
                              (Date)                                    **AUTHORIZED SIGNATURE**

*Renewed pol*
*8/27/04*
*Roe*

ISOP-CL 01538

**IN WITNESS WHEREOF, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.**

_Elizabeth M. Tuck_

_____
**Secretary**
National Union Fire Insurance Company
of Pittsburgh PA

_Elizabeth M. Tuck_

_____
**Secretary**
American Home Assurance Company

_Elizabeth M. Tuck_

_____
**Secretary**
The Insurance Company Of The
State of Pennsylvania

_[signature]_

_____
**President**
National Union Fire Insurance Company
of Pittsburgh PA.

_Susan Rivera_

_____
**President**
American Home Assurance Company

_[signature]_

_____
**President**
The Insurance Company Of The
State of Pennsylvania

77880 (3/01)

ISOP-CL 01539

# FOREIGN COMMERCIAL GENERAL LIABILITY DECLARATIONS

**POLICY NO.:** 80-0264926

**RENEWAL OF:** 80-0264887

**MEMBERS OF THE
AMERICAN INTERNATIONAL GROUP, INC.
EXECUTIVE OFFICES
NEW YORK, N.Y. 10270
(212) 770-7000**

**PRODUCER:**
Marsh Risk & Insurance Services
Three Embarcadero Center
San Francisco, California 94111

1. NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH

2. AMERICAN HOME ASSURANCE COMPANY

3. THE INSURANCE COMPANY OF THE
   STATE OF PENNSYLVANIA

| 3 | COVERAGE IS PROVIDED IN THE COMPANY
DESIGNATED BY NUMBER |

A STOCK INSURANCE COMPANY
(HEREIN CALLED THE COMPANY)

**NAMED INSURED:**   Kinetic Systems, Inc.

**MAILING ADDRESS.**   2805 Mission College Boulevard
Santa Clara, California 95054

**POLICY PERIOD:**   From:   August 30, 2003   To:   August 30, 2004
At 12:01 A.M., Standard Time at your mailing address shown above

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

## LIMITS OF INSURANCE

| | |
|---|---|
| MASTER CONTROL PROGRAM AGGREGATE LIMIT | $2,000,000 00 |
| GENERAL AGGREGATE LIMIT (Other Than Prod-Comp Operations) | $2,000,000 00 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 00 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 00 |
| EACH OCCURRENCE LIMIT | $1,000,000.00 |
| MEDICAL EXPENSE LIMIT – PER PERSON | $10,000 00 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $500,000 00 |
| AUTOMOBILE LIABILITY (EXCESS/DIC OF LOCAL PRIMARY POLICIES) | $2,000,000 00 |

Forms of Business:   ☐ Individual   ☐ Partnership   ☐ Joint Venture   ☒ Organization
(Other than Partnership
or Joint Venture)

**Business Description:**   A provider of high purity and validated process piping systems for the
semiconductor, biotechnology, and pharmaceutical industries.

**Location of All Premises you Own, Rent or Occupy:**

| | CLASSIFICATION | CODE NO. | PREMIUM BASIS (RECEIPTS) | RATE PER $1,000.00 OF RECEIPTS | ADVANCED PREMIUM |
|---|---|---|---|---|---|
| | As | Per | Endorsement | No. 01 | $112,263.00 |

U.S. Premium shown is payable:   $114,763.00   at inception.

Non-U.S. Premium shown is payable:   $2,500 00   at inception.

ISOP-CL 01540

**ENDORSEMENTS ATTACHED TO THIS POLICY:** 77880, 77881, 77882, 78967, 78970, 78972, 78974, 78977, 78979, 78990, 78996, 79007, 79038, 79040, 79048, 79056, 79075, 79121, 80971, 80976, 80986, and Endorsement Number 01.

COUNTERSIGNED  09/23/2003 SH/ER/LAE(SF2003)          BY  *Stephen Hacke*
                    (Date)                                   AUTHORIZED SIGNATURE

---

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative

*Elizabeth M. Tuck*

**Secretary**
National Union Fire Insurance Company
of Pittsburgh PA

*Elizabeth M. Tuck*

**Secretary**
American Home Assurance Company

*Elizabeth M. Tuck*

**Secretary**
The Insurance Company Of The
State of Pennsylvania

*John Krug*

**President**
National Union Fire Insurance Company
of Pittsburgh PA

*Susan Rivera*

**President**
American Home Assurance Company

**President**
The Insurance Company Of The
State of Pennsylvania

77881 (3/01)

ISOP-CL 01541

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**OCCURRENCE FORM**

### PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **you** and **your** refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words **we**, **us** and **our** refer to the Company providing this insurance.

The word **insured** means any person or organization qualifying as such under Section II - Who Is an Insured.

Other words and phrases that appear in bold type have special meaning. Refer to Section V - Definitions.

### SECTION I - COVERAGES

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1   Insuring Agreement

    a   We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any claim or **suit** that may result. But·

        (1)  The amount **we** will pay for damages is limited as described in Section III - Limits Of Insurance, and

        (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C

        (3)  Our duty to defend applies only in those countries in the **coverage territory** where legal circumstances permit us to defend. In those countries in the **coverage territory** where legal circumstances do not permit us to defend, we will reimburse **you** for **your** defense costs, subject to our prior

authorization.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B

    b   This insurance applies to **bodily injury** and **property damage** only if

        (1)  The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

        (2)  The **bodily injury** or **property damage** occurs during the **policy period**; and

        (3)  Prior to the **policy period**, no insured listed under Paragraph I of Section II - Who Is An Insured and no employee authorized by you to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the **policy period**, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the **policy period** will be deemed to have been known prior to the **policy period**

        (4)  Any claim or **suit** is made or brought in the **coverage territory** or the United States of America, its territories and possessions, Puerto Rico or Canada.

    c   **Bodily Injury** or **property damage** which occurs during the **policy period** and was not, prior to the **policy period**, known to have occurred by any insured listed under Paragraph I. of Section II – Who Is An Insured or any employee authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the **policy period**.

    d.  **Bodily Injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph I. of Section II – Who Is An Insured or any employee

Includes copyrighted material of Insurance Services Office, Inc., with its permission

ISOP-CL 01542

authorized by you to give or receive notice of an **occurrence** or claim:

   (1)   Reports all, or any part, of the **bodily injury or property damage** to us or any other insurer;

   (2)   Receives a written or verbal demand or claim for damages because of the **bodily injury or property damage**, or

   (3)   Becomes aware by any other means that **bodily injury or property damage** has occurred or has begun to occur

e   Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**

**2   Exclusions**

This insurance does not apply to

a   Expected or Intended Injury

   **Bodily injury or property damage** expected or intended from the standpoint of the **insured** This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property

b.   Contractual Liability

   **Bodily injury or property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages:

   (1)  That the **insured** would have in the absence of the contract or agreement, or

   (2)  Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury or property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury or property damage**, provided.

     (a)  Liability to such party for, or for the cost of, that party's defense has

been assumed in the same **insured contract**; and

     (b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged

c.   Liquor Liability

   **Bodily injury or property damage** for which any **insured** may be held liable by reason of

   (1)  Causing or contributing to the intoxication of any person,

   (2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol, or

   (3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages

d   Workers' Compensation and Similar Laws

   Any obligation of the **insured** under a workers' compensation, disability benefits or unemployment compensation law or any similar law

e   Employer's Liability

   **Bodily injury** to

   (1)  An **employee** of the **insured** arising out of and in the course of.

     (a)  Employment by the **insured**; or

     (b)  Performing duties related to the conduct of the **insured's** business; or

   (2)  The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph (1) above.

   This exclusion applies:

   (1)  Whether the **insured** may be liable as an employer or in any other capacity; and

   (2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury

ISOP-CL 01543

This exclusion does not apply to liability assumed by the insured under an insured contract.

f. Pollution

(1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to

(i) Bodily injury if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building,

(ii) Bodily injury or property damage for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not or never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) Bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire,

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste,

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor However, this subparagraph does not apply to

(i) Bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them This exception does not apply if the bodily injury or property damage arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor,

(ii) Bodily injury or property damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) Bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire.

 Includes copyrighted material of Insurance Services Office, Inc , with its permission

ISOP-CL 01544

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants

(2) Any loss, cost or expense arising out of any

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants

However, this paragraph does not apply to liability for damages because of property damage that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority

g    Aircraft, Auto or Watercraft

Bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured  Use includes operation and loading or unloading

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the bodily injury or property damage involved the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 50 feet long; and
(b) Not being used to carry persons or property for a charge;

(3) Parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any insured contract for the ownership, maintenance or use of aircraft or watercraft; or

(5) Bodily injury or property damage arising out of the operation of any of the equipment listed in Paragraph f (2) or f (3) of the definition of mobile equipment

h    Mobile Equipment

Bodily injury or property damage arising out of.

(1) The transportation of mobile equipment by an auto owned or operated by or rented or loaned to any insured, or

(2) The use of mobile equipment in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity

i    War

Bodily injury or property damage arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war War includes civil war, insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

j.    Damage To Property

Property damage to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of

ISOP-CL 01545

injury to a person or damage to another's property;

(2) Premises you sell, give away or, abandon, if the property damage arises out of any part of those premises;

(3) Property loaned to you,

(4) Personal property in the care, custody or control of the insured,

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations, or

(6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it

Paragraphs (1), (3) and (4) of this exclusion do not apply to property damage (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days A separate limit of insurance applies to Damage to Premises Rented to You as described in Section III - Limits of Insurance

Paragraph (2) of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement

Paragraph (6) of this exclusion does not apply to property damage included in the products-completed operations hazard.

k. Damage To Your Product

Property damage to your product arising out of it or any part of it.

l. Damage To Your Work

Property damage to your work arising out of it or any part of it and included in the products-completed operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor

m. Damage To Impaired Property Or Property Not Physically Injured

Property damage to impaired property or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in your product or your work; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.

n Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of

(1) Your product;
(2) Your work, or
(3) impaired property,

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it

o Employment-Related Practices

Bodily injury to

(1) A person arising out of any·

(a) Refusal to employ that person;
(b) Termination of that person's employment; or
(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of bodily injury to that

Includes copyrighted material of Insurance Services Office, Inc , with its permission

ISOP-CL 01546

person at whom any of the employment related practices describe in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury

p  **Personal and Advertising Injury**

Bodily injury arising out of personal and advertising injury

q  **Asbestos**

Property damage or bodily injury, arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such property damage or bodily injury as a result of manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust

r  **Terrorism**

Bodily injury or property damage arising directly or indirectly as a result of or in connection with terrorism including, but not limited to, any contemporaneous or ensuing bodily injury or property damage caused by fire, looting or theft.

Exclusions c. through n., with the exception of exclusion i, War, and r., Terrorism do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.  Insuring Agreement

a  We will pay those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance

applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for personal and advertising injury to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or suit that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

(3) Our duty to defend applies only in those countries in the coverage territory where legal circumstances permit us to defend. In those countries in the coverage territory where legal circumstances do not permit us to defend, we will reimburse you for your defense costs, subject to our prior authorization          .

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B

b  This insurance applies to personal and advertising injury caused by an offense arising out of your business, but only if the offense was committed in the coverage territory during the policy period. Any claim or "suit" must be made or brought in the coverage territory or the United States of America, its territories and possessions, Puerto Rico or Canada

2  Exclusions

This insurance does not apply to

a  **Knowing Violation Of Rights Of Another**

Personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury

b.  **Material Published With Knowledge Of Falsity**

Personal and advertising injury arising out of oral or written publication of material, if

ISOP-CL 01547

done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

Personal and advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

Personal and advertising injury arising out of a criminal act committed by or at the direction of the insured.

**e Contractual Liability**

Personal and advertising injury for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f Breach Of Contract**

Personal and advertising injury arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement.

**g Quality Or Performance Of Goods – Failure To Conform To Statements**

Personal and advertising injury arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your advertisement

**h Wrong Description Of Prices**

Personal and advertising injury arising out of the wrong description of the price of goods, products or services stated in your advertisement.

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

Personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in **your advertisement**, of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

Personal and advertising injury committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 15 a , b and c of personal and advertising injury under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting

**k Electronic Chatrooms Or Bulletin Boards**

Personal and advertising injury arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control

**l Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m Pollution**

Personal and advertising injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time

**n Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants, or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing,

ISOP-CL 01548

treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

o. **Asbestos**

Arising out of the manufacture of, mining of, use of, sale of, installation·of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust

p **War**

Personal and advertising injury arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war War includes civil war, insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution

q **Employment-Related Practices**

Personal and advertising injury to

(1) A person arising out of any·

(a) Refusal to employ that person,

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of personal and advertising injury to that person at whom any of the employment related practices describe in paragraphs (a), (b) or (c) above is directed.

This exclusion applies.

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury

r. **Terrorism**

Personal and advertising injury arising directly or indirectly as a result of or in connection with terrorism including, but not limited to, any contemporaneous or ensuing personal and advertising injury caused by fire, looting or theft

COVERAGE C MEDICAL PAYMENTS

1. Insuring Agreement

a We will pay medical expenses as described below for bodily injury caused by an accident

(1) On premises you own or rent,

(2) On ways next to premises you own or rent, or

(3) Because of your operations;

provided that·

(1) The accident takes place in the coverage territory and during the policy period,

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for.

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions

We will not pay expenses for bodily injury:

a **Any Insured**

ISOP-CL 01549

To any insured, except volunteer workers.

b **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies

d. **Workers Compensation And Similar Laws**

To a person, whether or not an employee of any insured, if benefits for the bodily injury are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics

f **Products-Completed Operations Hazard**

Included within the products-completed operations hazard

g **Coverage A Exclusions**

Excluded under Coverage A

h **War**

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

i. **Terrorism**

Arising directly or indirectly as a result of or in connection with terrorism including, buy not limited to any contemporaneous or ensuing bodily injury caused by fire, looting or theft.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle or any suit against an insured we defend:

   a All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the suit.

   f Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer

   g All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a suit and an indemnitee of the insured is also named as a party to the suit, we will defend that indemnitee if all of the following conditions are met:

   a. The suit against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an insured contract,

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same insured contract,

   d The allegations in the suit and the information we know about the occurrence are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee,

 Includes copyrighted material of Insurance Services Office, Inc., with its permission

ISOP-CL 01550

e. The indemnitee and the .sured ask us to conduct and control the defense of that indemnitee against such suit and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to.

(a) Cooperate with us in the investigation, settlement or defense of the suit,

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the suit;

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the Indemnitee; and

(2) Provides us with written authorization to

(a) Obtain records and other information related to the suit; and

(b) Conduct and control the defense of the indemnitee in such suit

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2 b. (2) of Section I - Coverage A - Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for bodily injury and property damage and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f above, are no longer met.

## SECTION II- WHO AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business Your managers are insureds, but only with respect to their duties as your managers.

d An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders

e A trust, you are an insured Your trustees are also insureds, but only with respect to their duties as trustees

2 Each of the following is also an insured:

a Your volunteer workers only while performing duties related to the conduct of your business, or your employees, other than either your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these employees or volunteer workers are insured for.

(1) Bodily injury or personal and advertising injury·

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-employee while in the course of his or her employment or performing duties related to the conduct of your business, or to your other volunteer

Includes copyrighted material of Insurance Services Office, Inc , with its permission

ISOP-CL 01551

workers while performing duties related to the conduct of **your** business;

(b) To the spouse, child, parent, brother or sister of that co-employee as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services

(2) **Property damage** to property

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your employees, volunteer workers, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company)

b Any person (other than **your** employee, volunteer worker), or any organization while acting as **your** real estate manager

c Any person or organization having proper temporary custody of **your** property if **you** die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until **your** legal representative has been appointed.

d. **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this Coverage Part.

3 With respect to mobile equipment registered in **your** name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with **your** permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment,

and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. **Bodily injury** to a co-employee of the person driving the equipment; or

b. **Property damage** to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4 Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier,

b Coverage A does not apply to **bodily injury** or **property damage** that occurred before you acquired or formed the organization; and

c Coverage B does not apply to personal and advertising injury arising out of an offense committed before you acquired or formed the organization

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of

a. Insureds;

b Claims made or suits brought; or

c. Persons or organizations making claims or bringing suits.

2 The Master Control Program Aggregate is the most we will pay for the sum of damages paid under this policy and any **local underlying policy**. **You** will reimburse **us** within thirty (30) days of our request for any payment we make under this policy or any **local underlying policy** for damages

ISOP-CL 01552

or expenses after the Mass. Control Program Aggregate is exhausted.

3. Subject to 2. above, the General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of bodily injury or property damage included in the products-completed operations hazard; and

   c. Damages under Coverage B.

4. Subject to 2. above, the Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of bodily injury and property damage included in the products-completed operations hazard

5. Subject to 3 above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all personal and advertising injury sustained by any one person or organization.

6. Subject to 3. or 4. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A, and

   b. Medical expenses under Coverage C because of all bodily injury and property damage arising out of any one occurrence

7. Subject to 6 above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of property damage to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner

8. Subject to 6 above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of bodily injury sustained by any one person.

9. All payments made under any local policy issued to you by us or any other insurance company will reduce the Limits of Insurance of this policy.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding

period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an occurrence or offense which may result in a claim. To the extent possible, notice should include

      (1) How, when and where the occurrence or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the occurrence or offense

      Notice of an occurrence or offense is not notice of a claim.

   b. If a claim is made or suit is brought against any insured, you must.

      (1) Immediately record the specifics of the claim or suit and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or suit as soon as practicable

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or

ISOP-CL 01553

damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent

**3  Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a  To join us as a party or otherwise bring us into a suit asking for damages from an insured, or

b  To sue us on this Coverage Part unless all of its terms have been fully complied with

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative

**4  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a  Primary Insurance

This insurance is primary except when b below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c below.

b.  Excess Insurance

This insurance is excess over:

(1)  Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a)  That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for your work,

(b)  That is Fire insurance for premises rented to you or temporarily

occupied by you with permission of the owner;

(c)  That is insurance purchased by you to cover your liability as a tenant for property damage to premises rented to you or temporarily occupied by you with permission of the owner, or

(d)  If the loss arises out of the maintenance or use of aircraft, autos or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A Bodily injury And Property Damage Liability

(2)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement; or

(3)  Any of the other insurance or your self-insurance plan that that covers a loss on the same basis

When this insurance is excess, we will have no duty under Coverages A or B to defend, the insured against any suit if any other insurer has a duty to defend the insured against that suit. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance, and

(2)  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part

c  Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each

ISOP-CL 01554

insurer contributes equ    amounts until it
has paid its applicable limit of insurance or
none of the loss remains, whichever comes
first.

If any of the other insurance does not
permit contribution by equal shares, we will
contribute by limits. Under this method,
each insurer's share is based on the ratio of
its applicable limit of insurance to the total
applicable limits of insurance of all insurers.

d   Difference in Conditions

When the insurance provided by this policy
has broader coverage than any other policy
available to you covering the same loss, the
insurance afforded by this policy will apply
to the extent that any coverage or condition
herein is less restrictive to you than are the
terms and conditions afforded under that
other policy

5    Maintenance of Underlying Insurance

For as long as this policy is in effect all local
underlying policies must·
a    Continuously provide no less coverage than
in effect at inception of this policy; and

b    Afford no lower Limits of Insurance than in
effect at inception of this policy, except for
reduction or exhaustion of primary limits
solely due to payment of losses.

This policy shall apply as though such policies
had been maintained in force at the terms and
conditions at inception of this policy.

6    Premium Audit

a    We will compute all premiums for this
Coverage Part in accordance with our rules
and rates.

b    Premium shown in this Coverage Part as
advance premium is a deposit premium
only.  At the close of each audit period we
will compute the earned premium for that
period. Audit premiums are due and payable
on notice to the first Named Insured. If the
sum of the advance and audit premiums
paid for the policy period is greater than the
earned premium, we will return the excess
to the first Named Insured

c.   The first Named Insured must keep records
of the information we need for premium
computation, and send us copies at such
times as we may request.

7.   Representations

By accepting    policy, you agree:

a.   The statements in the Declarations are
accurate and complete;

b.   Those statements are based upon
representations you made to us; and

c    We have issued this policy in reliance upon
your representations.

8.   Separation Of Insureds

Except with respect to the Limits of Insurance,
and any rights or duties specifically assigned in
this Coverage Part to the first Named Insured,
this insurance applies:

a    As if each Named Insured were the only
Named Insured, and

b    Separately to each insured against whom
claim is made or suit is brought

9    Transfer Of Rights Of Recovery Against Others
To Us

If the insured has rights to recover all or part of
any payment we have made under this
Coverage Part, those rights are transferred to
us   The insured must do nothing after loss to
impair them   At our request, the insured will
bring suit or transfer those rights to us and help
us enforce them

10   When We Do Not Renew

If we decide not to renew this Coverage Part,
we will mail or deliver to the first Named Insured
shown in the Declarations written notice of the
nonrenewal not less than 30 days before the
expiration date.

If notice is mailed, proof of mailing will be
sufficient proof of notice

11.  Cancellation

a    The first Named Insured shown in the
Declarations may cancel this policy by
mailing or delivering to us advance written
notice of cancellation.

b.   We may cancel this policy by mailing or
delivering to the first Named Insured written
notice of cancellation at least·

(1)  10 days before the effective date of
cancellation if we cancel for non-
payment of premium, or

(2)  60 days before the effective date of
cancellation if we cancel for any other

ISOP-CL 01555

reason.

c. **We will mail or deliver our notice to the first Named Insured's last mailing address known to us.**

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date

e If this policy is canceled, we will send the first Named Insured any premium refund due If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata If the first Named Insured cancels and the Total Advance Program Premium is indicated as a minimum premium, no refund will be made. The cancellation will be effective even if we have not made or offered a refund.

f If notice is mailed, proof of mailing will be sufficient proof of notice

12 Changes

This policy contains all the agreements between you and us concerning the insurance afforded The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy

13 Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward

14 Inspections and Surveys

a. We have the right to.

(1) make inspections and surveys at any time,

(2) give you reports on the conditions we find; and

(3) recommend changes

b We are not obligated to make any inspections, surveys, reports or recommendations, and such actions we do make relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And, we do

not warra. . that conditions:

(1) are safe or healthful; or

(2) comply with laws, regulations, codes or standards.

c. Paragraphs a. and b. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

f. Paragraph b. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators

15 Premiums

The first Named Insured shown in the Declarations

a. is responsible for the payment of all premiums, and

b will be the payee for any return premiums we pay

16 Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your right and duties, but only with respect to that property.

**SECTION V - DEFINITIONS**

1. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a website that is about your goods, products

ISOP-CL 01556

or services for the purposes of attracting customers or supporters is considered an advertisement.

2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

3. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **Coverage territory** means anywhere in the world, including international waters or airspace, but excluding.

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada; and

   b. Those countries against which the Office of Foreign Assets Control of the U S Department of the Treasury administers and enforces economic and trade sanctions

5. **Employee** includes a **leased worker** **Employee** does not include a **temporary worker**.

6. **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document

7. **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be

8. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because

   a It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous, or

   b You have failed to fulfill the terms of a contract or agreement,

   if such property can be restored to use by·

   a The repair, replacement, adjustment or removal of **your product** or **your work**; or

   b Your fulfilling the terms of the contract or agreement.

9. **Insured contract** means:

   a A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any

person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e An elevator maintenance agreement,

   f That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization **Tort liability** means a liability that would be imposed by law in the absence of any contract or agreement         .

   Paragraph f does not include that part of any contract or agreement

   (1) That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage, or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and

ISOP-CL 01557

supervisory, inspection, architectural or engineering activities.

10. **Leased worker** means a person leased to you by a labor-leasing firm under an agreement between you and the labor-leasing firm, to perform duties related to the conduct of your business. **Leased worker** does not include a temporary worker.

11. **Loading or unloading** means the handling of property:

    a   After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto,**

    b.  While it is in or on an aircraft, watercraft or auto, or

    c   While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or auto.

2. **Local underlying policy** means a primary policy effective on or after the inception of this policy which has been issued at our direction or coordinated by us specifically for this insurance program

13. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment.

    a.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads,

    b.  Vehicles maintained for use solely on or next to premises you own or rent;

    c.  Vehicles that travel on crawler treads,

    d   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills, or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.  Vehicles not described in a, b, c, or d, above that are not self-propelled and are maintained primarily to provide mobility to

permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) Cherry pickers and similar devices used to raise or lower workers,

    f   Vehicles not described in a, b, c, or d, above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

    (1) Equipment designed primarily for

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing, or

        (c) Street cleaning,

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14 **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions

15 **Personal and advertising injury** means injury, including consequential bodily injury, arising out of one or more of the following offenses.

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution,

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services,

ISOP-CL 01558

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your advertisement; or

g. Infringing upon another's copyright, trade dress or slogan in your advertisement.

16 Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste Waste includes materials to be recycled, reconditioned or reclaimed

17 Products-completed operations hazard

a Includes all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned However, your work will be deemed completed at the earliest of the following times

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed

b. Does not include bodily injury or property damage arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

18 Property damage means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b Loss of use of tangible property that is not physically injured All such loss of use shall be deemed to occur at the time of the occurrence that caused it

For the purposes of this insurance, electronic data is not tangible property

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19 Suit means a civil proceeding in which damages because of bodily injury, property damage or personal and advertising injury to which this insurance applies are alleged. Suit includes

a An arbitration proceeding in which such damages claimed and to which the insured must submit or does submit with our consent; or

b Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

20. Temporary worker means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions

21 Terrorism means the use or threatened use of force or violence against persons or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization,

ISOP-CL 01559

government, power, authority, or military force, when the effect is to intimidate or coerce a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Terrorism** shall also include an act which is verified or recognized by the United States Government as an act of terrorism.

22. **Volunteer worker** means a person who is not your employee, and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

23. **Your product:**

   a.  Means

      (1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by.

         (a)  You,
         (b)  Others trading under your name; or
         (c)  A person or organization whose business or assets you have acquired; and

      (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b.  Includes:

      (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product, and

      (2)  The providing of or failure to provide warnings or instructions.

   c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

24. **Your work.**

   a.  Means:

      (1)  Work or operations performed by you or on your behalf, and

      (2)  Materials, parts or equipment furnished in connection with such work or operations

   b  Includes.

      (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2)  The providing of or failure to provide warnings or instructions

ISOP-CL 01560

## ENDORSEMENT NO. 78967

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

Name of Person or Organization (Vendor)  As declared by contract.

Your Products  All products of the Named Insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

    a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    b. Any express warranty unauthorized by you,

    c. Any physical or chemical change in the product made intentionally by the vendor;

    d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

78967 (12/01)                                                                                     Page 1 of 2

ISOP-CL 01561

### ENDORSEMENT NO. 78967

**This endorsement, effective 12:01 A.M.,**  August 30, 2003

**Forms a part of Policy No.:**  80-0264926

**Issued to:**  Kinetic Systems, Inc.

**By:**  The Insurance Company of the State of Pennsylvania

### ADDITIONAL INSURED – VENDORS
(CONTINUED)

e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product,

g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2 This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products

All other terms, conditions, and exclusions shall remain the same.

_[signature]_

**AUTHORIZED REPRESENTATIVE**

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1986, 1988

ISOP-CL 01562

**ENDORSEMENT NO. 78970**

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

<u>**ADDITIONAL INSURED - WHERE REQUIRED UNDER CONTRACT
OR AGREEMENT**</u>

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART
GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Who is an Insured (Section II)** is amended to add any person(s) or Organization(s) you are obligated to include as an additional insured under this policy as a result of any contract or agreement, but only with respect to liability arising out of your operations or premises owned by or rented to you. The insurance provided will not exceed the lesser of

1. The coverage and/or limits of this policy, or

2 The coverage and/or limits required by said contract or agreement

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**

78970 (12/01)                                                      Page 1 of 1

## ENDORSEMENT NO. 78972

**This endorsement, effective 12:01 A.M.,**    August 30, 2003

**Forms a part of Policy No.:**      80-0264926

**Issued to:**      Kinetic Systems, Inc.

**By:**      The Insurance Company of the State of Pennsylvania

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AIRPORT EXCLUSION

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Section I - Coverages, Coverage A. Bodily Injury and Property Damage Liability, 2., Exclusions** is amended to add.

**Bodily injury** or **property damage** arising out of the ownership, maintenance, use of, or any operations necessary or incidental to, any airport.

**Section I. - Coverages, Coverage B. Personal and Advertising Injury Liability, 2., Exclusions,** is amended to add.

**Personal and advertising injury** arising out of the ownership, maintenance, use of or any operations necessary or incidental to, any airport.

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE

78972 (12/01)                        Page 1 of 1

ISOP-CL 01564

## ENDORSEMENT NO. 78974

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT (BROAD FORM)

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For policies issued with a Self-Insured Retention Endorsement, **Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit, a.** is amended to read

    a  You must see to it that we are notified as soon as practicable of any "occurrence" or any offense which may result in a claim. Knowledge of an "occurrence" or an offense by your agent, your servant, or your employee will not in itself constitute knowledge to you, unless the Director of Risk Management (or one with similar or equivalent title) or his/her designee, at the address shown in the policy declarations, will have received such notice. To the extent possible notice should include

        (1) How, when and where the "occurrence" or offense took place,
        (2) The names and addresses of any injured persons and witnesses, and
        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense, including but not limited to:

            (a) a fatality;
            (b) paralysis of any part of the body;
            (c) a major extremity or multiple minor extremity amputations,
            (d) a brain or brain stem injury;
            (e) severe burns or disfigurement;
            (f) partial or total blindness,
            (g) loss or impairment of hearing;
            (h) a heart attack;
            (i) reserves that exceed 50% of the "retained limit".

As respects the above categories, You must provide us with any and all additional information, material and/or data, subsequent to the original notice, as it becomes available.

**Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit,** is also amended to add

    (e) Notice hereunder will be forwarded in writing to:

All other terms, conditions, and exclusions shall remain the same.

<hr>

**AUTHORIZED REPRESENTATIVE**

78974 (12/01)                                          Page 1 of 1

ISOP-CL 01565

## ENDORSEMENT NO. 78977

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDMENT OF WHO IS AN INSURED
### (RECREATIONAL COVERAGE)

This endorsement modifies insurance provided under the following.

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Section II - Who is an Insured, 2. a.,** is amended to read:

a.  **Your volunteer workers** only while performing duties related to the conduct of **your** business; or **your employees**, other than either **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), but only for acts within the scope of their employment by **you**; or while performing duties related to the conduct of **your** business; or while practicing for or participating in athletic games or a member of a team (including managers and any supporting personnel) sponsored by **you**; or while attending social gatherings which **you** sponsor.

However, no **employee** is an insured for:

(1) **bodily injury** or **personal and advertising injury**

(a)  To **you**, to **your** partners or members (if **you** are a partnership or joint venture), to **your** members (if **you** are a limited liability company), to a co-employee while in the course of his or her employment or performing duties related to the conduct of **your** business, or to **your** other **volunteer workers** while performing duties related to the conduct of **your** business;

(b)  To the spouse, child, parent, brother or sister of that co-employee as a consequence of paragraph (1) (a) above;

(c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1) (a) or (b) above; or

(d)  Arising out of his or her providing or failing to provide professional health care services.

All other terms, conditions, and exclusions shall remain the same.

_Stephen Haaske_
**AUTHORIZED REPRESENTATIVE**

78977 (12/01)

ISOP-CL 01566

**ENDORSEMENT NO. 78979**

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>BODILY INJURY DEFINITION EXTENSION</u>

This endorsement modifies insurance provided under the following.

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Section V - Definitions, 3., Bodily injury is amended to read:

3. **Bodily injury** means physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress.

All other terms, conditions, and exclusions shall remain the same.

_Stephen Gaske_
AUTHORIZED REPRESENTATIVE

78979 (12/01)                                                        Page 1 of 1

ISOP-CL 01567

## ENDORSEMENT NO. 78990

This endorsement, effective 12:01 A.M.,        August 30, 2003

Forms a part of Policy No.:        80-0264926

Issued to:        Kinetic Systems, Inc.

By:        The Insurance Company of the State of Pennsylvania

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE</u>
<u>ADDITIONAL DECLARATIONS</u>

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### COVERAGE
Employee Benefits Liability Insurance

### LIMIT OF LIABILITY
$1,000,000.00 Each Wrongful Act or series of related Wrongful acts
$2,000,000.00 Each Annual Aggregate

### DEDUCTIBLE
$1,000.00 Each Wrongful Act or series of related Wrongful Acts

No of Employees **To be determined**

Estimated Annual Premium:        **Included**

### INSURING AGREEMENTS

EMPLOYEE BENEFITS LIABILITY

We will pay the "Insured" for those sums which the "Insured" shall become legally obligated to pay as damages because of any claim made against the "Insured" due to any "Wrongful Act" of the "Insured", or any other person for whose acts the "Insured" is legally liable, in the "Administration" of the "Insured's" Employee Benefits Programs", as defined in the Definitions section of this policy. This insurance applies only if a claim for damages covered by this endorsement is first made against the "Insured" during the policy period. We have the right and duty to defend any suit against the "Insured" seeking damages on account of such negligent act, error or omission, even if any of the allegations of the suit are groundless, false or fraudulent, and we may make such investigation and settlement of any claim or suit as we deem expedient.

ISOP-CL 01568

**ENDORSEMENT NO. 78990**

This endorsement, effective 12:01 A.M.,   August 30, 2003

Forms a part of Policy No.:   80-0264926

Issued to:   Kinetic Systems, Inc.

By:   The Insurance Company of the State of Pennsylvania

<u>EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE
ADDITIONAL DECLARATIONS</u>
(CONTINUED)

**DEFINITIONS**

DEFINITION OF "Insured"

With respect to the insurance afforded by this endorsement the unqualified word "Insured" includes the Named Insured, provided that (a) if the Named Insured is designated as an individual, the insurance applies only to the conduct of a business of which he is the sole proprietor and (b) the unqualified word "Insured" also includes the following.

    A. If the Named Insured is or includes a partnership or joint venture, any partner or member thereof by only with respect to his liability as such;

    B. Any executive officer, director or stockholder of the Named "Insured" while acting within the scope of his duties as such;

    C. Any employee, provided such employee is authorized to act in the "Administration" of the Named "Insured's" Employee Benefits Program."

DEFINITION OF "Employee Benefits Programs"

The terms "Employee Benefits Programs"; means (a) group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workmen's compensation, unemployment insurance, social benefits, disability benefits, and (b) any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

DEFINITION OF "Administration"

The unqualified word "administration" wherever used shall mean:

    A. Giving counsel to employees with respect to the Employee Benefits Programs;

    B. Interpreting the Employee Benefits Programs;

    C. Handling of records in connection with the Employee Benefits Programs;

    D. Effective enrollment, termination or cancellation of employees under the "Employee Benefits Programs", provided all are acts which are authorized by the Named "Insured".

78990 (12/01)                                                                                                                    Page 2 of 5

ISOP-CL 01569

## ENDORSEMENT NO. 78990

**This endorsement, effective 12:01 A.M.,** August 30, 2003

**Forms a part of Policy No.:** 80-0264926

**Issued to:** Kinetic Systems, Inc.

**By:** The Insurance Company of the State of Pennsylvania

### EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE
### ADDITIONAL DECLARATIONS
(CONTINUED)

DEFINITION OF "Wrongful Act"

"Wrongful Act" means any actual or alleged negligent act, error or omission in the "Administration" of the Employee Benefits Plan.

### EXCLUSIONS

This endorsement does not apply to.

1 Any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation,

2 Bodily injury to or sickness, disease or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof,

3 Any claim for failure of performance of contract by an insurer;

4 Any claim based upon the "Insured's" failure to comply with any law concerning workmen's compensation, unemployment insurance, social security or disability benefits,

5. Any claim based upon·

    A. failure of any investment(s) including but not limited to stock to perform as represented by any "Insured",

    B. advice given by an "Insured" to an employee to participate in any investment plan including but not limited to stock subscription plans

6 All sums which the "Insured" shall become legally obligated to pay as loss because of any Breach of Fiduciary Duty (as defined below), or because of any Breach of Fiduciary Duty by any person for which the "Insured" is legally responsible and arising out of the "Insured's" activity as a fiduciary of any Plan covered by this endorsement. The term, "Breach of Fiduciary Duty" shall mean the violation of any of the responsibilities, obligations of duties imposed upon fiduciaries by the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 or amendments thereto with respect to any Plan covered by this endorsement;

7 Any claim made against the "Insured" based on or attributable to any failure or omission on the part of the "Insured" to effect and maintain insurance or bonding for Plan Property or Assets.

ISOP-CL 01570

**ENDORSEMENT NO. 78990**

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

## EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE
## ADDITIONAL DECLARATIONS
(CONTINUED)

### CONDITIONS

LIMITS OF LIABILITY

Regardless of the number of (a) "Insureds" under this policy (b) persons who sustain damage or (c) claims made or suits brought for such damages; the limit of liability stated in the ADDITIONAL DECLARATIONS of this endorsement as applicable to each "Wrongful Act" or series of related "Wrongful Acts" is the limit of our liability for all claims made on account of any "Wrongful Acts" or series of related acts by this policy for the period of liability stated in the ADDITIONAL DECLARATIONS as "Each Annual Aggregate" is, subject to the above provision, the total limit of our liability for all claims covered during the period this endorsement is in force

PREMIUM

The premium stated in the ADDITIONAL DECLARATIONS is an estimated premium only. Upon termination of each annual period of this endorsement the "Insured", on request, will furnish us a statement of the total number of employees at the end of the period  The earned premium shall be computed on the average of the number of employees at the end of the coverage period and that stated in the ADDITIONAL DECLARATIONS. If the earned premium thus computed exceeds the estimated premium paid, the "Insured" shall pay the excess to us; if less, we shall return to the "Insured" the unearned portion paid by such "Insured".

DEDUCTIBLE

The deductible amount indicated in the ADDITIONAL DECLARATIONS shall be subtracted from the total amount of all sums which we are obligated to pay or incur on behalf of the "Insured" on account of each occurrence as stated in the ADDITIONAL DECLARATIONS. The terms of this endorsement including those with respect to notice of claim or suit and our right to investigate and negotiate any such claim or suit, apply irrespective of the application of the deductible amount.

OPTIONAL EXTENDED REPORTING ENDORSEMENT

The coverage under the Employee Benefits Liability Endorsement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to buy a reporting endorsement. It extends the time to report covered claims. The claim must first be made against an "Insured" and reported to us within 3 years after the Employee  Benefits Liability Endorsement ends and while the reporting endorsement is in affect.

78990 (12/01)                                                        Page 4 of 5

## ENDORSEMENT NO. 78990

| | |
|---|---|
| This endorsement, effective 12:01 A.M., | August 30, 2003 |
| Forms a part of Policy No.: | 80-0264926 |
| Issued to: | Kinetic Systems, Inc. |
| By: | The Insurance Company of the State of Pennsylvania |

### EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE
### ADDITIONAL DECLARATIONS
(CONTINUED)

To obtain this reporting endorsement you must request it in writing and pay the additional premium within 30 days after this agreement ends  If we don't receive written notice and payment within this period, you may not exercise this right at a later date

We'll sell you this endorsement for the additional premium.  This additional premium will not exceed 200% of the annual premium for the Employee Benefits Liability Endorsement  Once you pay the premium we can't cancel the endorsement.  We will determine the additional premium taking into account the following

A  The exposures insured;

B. Previous types and amounts of insurance;

C  Limits of Liability available under the Employee Benefit Liability Insurance for future payment of damages, and

D. Other related factors

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Liability applicable to any claim to which The Employee Benefits Liability Endorsement applies.

CONFORMITY WITH STATUTE

Terms of this endorsement which are in conflict with the statute of the state wherein this endorsement is issued are hereby amended to conform to such statutes

OTHER TERMS OF POLICY

All other conditions, terms and exclusions contained in this policy remain unchanged.

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE

78990 (12/01)                                                                                           Page 5 of 5

ISOP-CL 01572

**ENDORSEMENT NO. 78996**

| | |
|---|---|
| This endorsement, effective 12:01 A.M., | August 30, 2003 |
| Forms a part of Policy No.: | 80-0264926 |
| Issued to: | Kinetic Systems, Inc. |
| By: | The Insurance Company of the State of Pennsylvania |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY</u>

This endorsement modifies insurance provided under the following.

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to **Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and **Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations.

    a Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

    b. Providing or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph 3 below, professional services include

    a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3 Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE

Includes copyrighted material of the Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997

78996 (12/01)

Page 1 of 1

ISOP-CL 01573

**ENDORSEMENT NO. 79007**

| | |
|---|---|
| This endorsement, effective 12:01 A.M., | August 30, 2003 |
| Forms a part of Policy No.: | 80-0264926 |
| Issued to: | Kinetic Systems, Inc. |
| By: | The Insurance Company of the State of Pennsylvania |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

<u>**EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**</u>

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to **Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and **Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity

Professional services include:

1  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications, and

2. Supervisory, inspection, architectural or engineering activities.

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

79007 (12/01)

ISOP-CL 01574

**ENDORSEMENT NO. 79038**

| | |
|---|---|
| This endorsement, effective 12:01 A.M., | August 30, 2003 |
| Forms a part of Policy No.: | 80-0264926 |
| Issued to: | Kinetic Systems, Inc. |
| By: | The Insurance Company of the State of Pennsylvania |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FELLOW EMPLOYEE EXCLUSION DELETED**

This endorsement modifies insurance provided under the following·

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Section II - Who is an Insured, 2. a. (1) (a) is amended to read

    (a) To you, to your partners or members (if you are a partnership or joint venture)

Section II - Who is an Insured, 3. a , is deleted in its entirety.

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE

79038 (12/01)

Page 1 of 1

ISOP-CL 01575

## ENDORSEMENT NO. 79040

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Section V - DEFINITIONS - is amended to add:**

"Incidental Medical Malpractice Injury" means "Bodily Injury" arising out of the rendering of or failure to render the following services:

    a  medical, surgical, dental, x-ray or nursing service, or treatment or the furnishing of food or beverages in connection therewith, or

    b  the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances

**Section II - WHO IS AN INSURED, 2. a. (1) (d) is deleted in its entirety and replaced with the following:**

    (d) Arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any physician, dentist, nurse or other medical practitioner employed or retained by you.  However, the insurance provided hereunder to such persons will not apply to liability arising out of services performed outside of the scope of their duties as your "employees." Any series of continuous, repeated or related acts will be treated as the occurrence of a single negligent professional healthcare service.

The Coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury".

All other terms, conditions, and exclusions shall remain the same.

*Stephen Hache*
**AUTHORIZED REPRESENTATIVE**

79040 (12/01)

Page 1 of 1

ISOP-CL 01576

**ENDORSEMENT NO. 79048**

This endorsement, effective 12:01 A.M.,   August 30, 2003

Forms a part of Policy No.:   80-0264926

Issued to:   Kinetic Systems, Inc.

By:   The Insurance Company of the State of Pennsylvania

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

<u>MARITIME LIABILITY ENDORSEMENT</u>
<u>IN REM COVERAGE</u>

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Section II - Who Is An Insured,** following the last unmarked paragraph, is amended to add:

*In Rem* actions against any watercraft owned or operated by or rented or loaned to any insured will in all respects be treated in the same manner as though the action were *In Personam* against that insured

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**

79048 (12/01)   Page 1 of 1

ISOP-CL 01577

## ENDORSEMENT NO. 79056

| | |
|---|---|
| This endorsement, effective 12:01 A.M., | August 30, 2003 |
| Forms a part of Policy No.: | 80-0264926 |
| Issued to: | Kinetic Systems, Inc. |
| By: | The Insurance Company of the State of Pennsylvania |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>OWNED, HIRED AND NON-OWNED AUTO LIABILITY</u>

This endorsement modifies insurance provided under the following.

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

<u>SCHEDULE</u>

COVERAGE
Owned, Hired and Non-Owned Auto Liability

LIMIT OF LIABILITY
**$1,000,000.00** per accident

A OWNED, HIRED AND NON-OWNED AUTO LIABILITY COVERAGE

The insurance provided under **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I – COVERAGES)** applies to bodily injury or property damage caused by an accident and resulting from the ownership, maintenance or use of a covered **auto** by **you** or **your employees** in the course of **your** business.

**B. EXCLUSIONS**

With respect to the coverages provided by this endorsement:

1 The exclusions under **Paragraph 2., Exclusions, of COVERAGE A -BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I - COVERAGES)**, other than exclusions a., d., i., o., p. and q., and the Nuclear Energy Liability Exclusion (Broad Form) do not apply.

2. Exclusion f. under Paragraph 2., Exclusions, of **COVERAGE A -BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I - COVERAGES)** is replaced by the following.
Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   a. That are, or that are contained in any property that is.
     (1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered **auto**;
     (2) Otherwise in the course of transit by or on behalf of the insured; or
     (3) Being stored, disposed of, treated or processed in or upon the covered **auto**;

   b. Before the **pollutants** or any property in which the **pollutants** are contained are

79056 (12/01)

Page 1 of 5

ISOP-CL 01578

## ENDORSEMENT NO. 79056

| | |
|---|---|
| This endorsement, effective 12:01 A.M., | August 30, 2003 |
| Forms a part of Policy No.: | 80-0264926 |
| Issued to: | Kinetic Systems, Inc. |
| By: | The Insurance Company of the State of Pennsylvania |

### OWNED, HIRED AND NON-OWNED AUTO LIABILITY
(CONTINUED)

moved from the place where they are accepted by the insured for movement into or onto the covered auto; or

c. After the pollutants or any property in which the pollutants are contained are moved from the covered auto to the place where they are finally delivered, disposed of, or abandoned by the insured.

Paragraph a above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered auto or its parts, if

(1) The pollutants escape, seep, migrate, or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such pollutants; and

(2) The bodily injury or property damage does not arise out of the operation of any equipment listed in Paragraphs 13.f (2) and 13.f (3) of the definition of mobile equipment.

Paragraphs b and c. above of this exclusion do not apply to accidents that occur away from premises owned by or rented to an insured with respect to pollutants not in or upon a covered auto if:

(1) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of a covered auto; and

(2) The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage.

3 The following exclusions are added to Paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I – COVERAGES):

This insurance does not apply to

a. Bodily injury to

(1) An employee of the insured arising out of and in the course of:

(a) employment by the insured, or
(b) performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of the employee as a consequence of paragraph (1) above

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury

This exclusion does not apply to:

(1) Liability assumed by the insured under an insured contract; or

(2) bodily injury to domestic employees not entitled to workers compensation benefits.

b. Property damage to:

79056 (12/01)

Page 2 of 5

ISOP-CL 01579

**ENDORSEMENT NO. 79056**

This endorsement, effective 12:01 A.M.,    August 30, 2003

Forms a part of Policy No.:    80-0264926

Issued to:    Kinetic Systems, Inc.

By:    The Insurance Company of the State of Pennsylvania

## OWNED, HIRED AND NON-OWNED AUTO LIABILITY
(CONTINUED)

(1) Property owned or being transported by, or rented or loaned to the **insured**, or

(2) Property in the care, custody or control of the **insured**.

c. **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages

(1) That the **insured** would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement.

C. For the purposes of this endorsement only, **WHO IS AN INSURED (SECTION II)** is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

1. **You;**

2. Any other person using a covered **auto** with **your** permission;

3. Any partner or executive officer of **yours**, but only while a covered **auto** is being used in **your** business; and

4. Any other person or organization, but only with respect to their liability because of

acts or omission of an insured under 1., 2., or 3 above

None of the following is an **insured**.

1 Any person engaged in the business of his or her employer with respect to **bodily injury** to any co-employee of such person injured in the course of employment,

2 Any person while employed in or otherwise engaged in performing duties in connection with an **auto business** other than an auto business you operate,

3 The owner or lessee (of whom **you** are a sublessee) of a **hired auto** or the owner of a **non-owned auto** or any agent or **employee** of any such owner or lessee, and

4 Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

D. **LIMITS OF INSURANCE**

1 For the purposes of this endorsement, **Paragraph 2. of LIMITS OF INSURANCE (Section III)** is replaced by the following:

2. The Master Control Program Aggregate is the most we will pay for the sum of damages paid under this policy and any local underlying policy except damages because of injury and damage arising out of the maintenance or use of an **owned auto, hired auto** or a **non-owned auto**. You will

79056 (12/01)                      Page 3 of 5

ISOP-CL 01580

**ENDORSEMENT NO. 79056**

This endorsement, effective 12:01 A.M.,    August 30, 2003

Forms a part of Policy No.:    80-0264926

Issued to:    Kinetic Systems, Inc.

By:    The Insurance Company of the State of Pennsylvania

## OWNED, HIRED AND NON-OWNED AUTO LIABILITY
### (CONTINUED)

reimburse us within thirty (30) days of our request for any payment we make under this policy or any local underlying policy for damages or expenses after the Master Control Program aggregate is exhausted

2   For the purposes of this endorsement only, **Paragraph 3.b. of LIMITS OF INSURANCE (Section III)** is replaced by the following:

b   Damages under Coverage A and Coverage B, except damages because of injury and damage included in the products-completed operations hazard or arising out of the maintenance or use of an **owned auto, hired auto** or a **non-owned auto**

### E   ADDITIONAL CONDITION

The insurance provided by this endorsement is subject to the following additional condition

**Warranty and Maintenance of Underlying Insurance**

For as long as our policy is in effect:

a.   In any country where compulsory automobile liability insurance law is in force, the coverage provided by this policy shall be excess of and reduced by the limit of such local compulsory insurance.

b   In any country where the compulsory requirement applies only to **bodily injury liability**, the insured shall, in addition, purchase property **damage liability** coverage for a limit of at least the equivalent of U.S. $10,000 each accident or occurrence, and the coverage provided by this policy shall be excess of and reduced by the limit of such coverage.

c.   In any country where there is no compulsory automobile liability insurance law in force, the **insured** shall procure local insurance for limits of at least the equivalent of U.S. $10,000 each person/$20,000 each accident or occurrence from **bodily injury** liability and U.S. $10,000 each accident or occurrence for property **damage** liability The coverage provided by this policy shall be excess of and reduced by the limits of such coverage

d   If the **insured** does not procure underlying insurance as stipulated in Item a, b, and c above, the coverage provided herein shall apply in the same manner and to the same extent as though local underlying insurance as herein required had been available to the **insured**

e.   Coverage is also provided under this policy for difference-in-conditions between this insurance and that provided by any other valid and collectible insurance available to the **insured.**

### F. ADDITIONAL DEFINITIONS

The insurance provided by this endorsement is subject to the following additional definitions.

1.   **Accident** includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage.**

2.   **Auto business** means the business or occupation of selling, repairing, servicing, storing or parking **autos.**

3. **Hired auto** means any **auto you** lease, hire or borrow. This does not include any **auto you**

79056 (12/01)      **Page 4 of 5**

ISOP-CL 01581

**ENDORSEMENT NO. 79056**

This endorsement, effective 12:01 A.M.,  August 30, 2003

Forms a part of Policy No.:  80-0264926

Issued to:  Kinetic Systems, Inc.

By:  The Insurance Company of the State of Pennsylvania

## OWNED, HIRED AND NON-OWNED AUTO LIABILITY
### (CONTINUED)

lease, hire or borrow from any of **your employees** or members of their households, or from any partner or **executive officer** of **yours.**

4. **Non-owned auto** means any **auto you** do not own, lease, hire or borrow which is used in connection with **your** business.

5. **Owned auto** means any auto **you** own including those autos **you** acquire ownership of after the policy begins.

For the purposes of this endorsement only, the definition of **insured contract** is amended by the addition of the following.

**Insured contract** means:
That part of any contract or agreement entered into, as part of **your** business, pertaining to the rental or lease, by **you** or any of **your employees**, of any **auto**.  However, such contract or agreement shall not be considered an **insured contract** to the extent . that it obligates **you** or any of **your** employees to pay for **property damage** to any auto rented or leased by **you** or any of **your** employees

All other terms, conditions, and exclusions shall remain the same.

*Stephen Baake*

AUTHORIZED REPRESENTATIVE

ISOP-CL 01582

## ENDORSEMENT NO. 79075

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>UNINTENTIONAL ERRORS AND OMISSIONS ENDORSEMENT</u>

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**Section IV - Commercial General Liability Conditions, 6. - Representations** is amended by adding:

    d  The unintentional failure by you or any Insured to provide accurate and complete representations as of the inception of the policy will not prejudice the coverages afforded by this policy

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE

79075 (12/01)

Page 1 of 1

ISOP-CL 01583

## ENDORSEMENT NO. 79121

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

Name of Person or Organization: As required by contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition (Section IV - **COMMERCIAL GENERAL LIABILITY CONDITIONS**) is amended by the addition of the following·

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

All other terms, conditions, and exclusions shall remain the same.

_Stephen Hanke_
AUTHORIZED REPRESENTATIVE

79121 (12/01)                                                                 Page 1 of 1

ISOP-CL 01584

## ENDORSEMENT NO. 80971

| | |
|---|---|
| This endorsement, effective 12:01 A.M., | August 30, 2003 |
| Forms a part of Policy No.: | 80-0264926 |
| Issued to: | Kinetic Systems, Inc. |
| By: | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### BROAD FORM NAMED INSURED

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**Policy Declarations, "Named Insured", is revised to include:**

"Named Insured" means the person or organization first named as the Named Insured on the Declarations Page of this policy (the "First Named Insured").  Named Insured also includes (1) any other person or organization named as a Named Insured on the Declarations Page, and (2) any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page has more than 50% ownership interest in or exercises management or financial control over

All other terms, conditions, and exclusions shall remain the same.

_Stephen Slack_
AUTHORIZED REPRESENTATIVE

80971 (10/02)                                                                 Page 1 of 1

ISOP-CL 01585

## ENDORSEMENT NO. 80976

This endorsement, effective 12:01 A.M.,   August 30, 2003

Forms a part of Policy No.:   80-0264926

Issued to:   Kinetic Systems, Inc.

By:   The Insurance Company of the State of Pennsylvania

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**BUSINESS AUTO COVERAGE PART**

**Section IV – Commercial General Liability Conditions, 11. Cancellation, paragraph b.** is deleted and replaced by the following:

b  **We** may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1)  10 days before the effective date of cancellation if **we** cancel for non-payment of premium, or

   (2)  90 days before the effective date of cancellation if **we** cancel for any other reason.

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE

80976 (10/02)                              Page 1 of 1

ISOP-CL 01586

## ENDORSEMENT NO. 80986

This endorsement, effective 12:01 A.M.,     August 30, 2003

Forms a part of Policy No.:                 80-0264926

Issued to:                                  Kinetic Systems, Inc.

By:                                         The Insurance Company of the State of Pennsylvania

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**FOREIGN BUSINESS AUTO COVERAGE PART**

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to **bodily injury** or **property damage**:

        (1) With respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

    C.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from **hazardous properties** of **nuclear material**, if:

        (1) The **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

        (2) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an **insured**; or

        (3) The **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

2.  As used in this endorsement:

    **hazardous properties** includes radioactive, toxic or explosive properties.

    **nuclear material** means **source material**, **special nuclear material** or **by-product material**.

80986 (10/02)                                                                Page 1 of 2

ISOP-CL 01587

# ENDORSEMENT NO. 01

| | |
|---|---|
| **This endorsement, effective 12:01 A.M.,** | August 30, 2003 |
| **Forms a part of Policy No.:** | 80-0264926 |
| **Issued to:** | Kinetic Systems, Inc. |
| **By:** | The Insurance Company of the State of Pennsylvania |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### OPERATIONS, RATE SCHEDULE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is hereby declared and agreed that the premium for Casualty Renewal Policy for the period from **August 30, 2003** to **August 30, 2004** is allocated as follows:

| Classification or Description of Operations | Premium Basis (Receipts) | Rate Per $1,000. of Receipts | Advanced Premium |
|---|---|---|---|
| General Liability | | | |
| •Primary | $113,552,288.00 | $1.20 | $104,763.00 |
| •Excess/DIC | | $0 50 | |
| | | | |
| Local Policy included in this premium | | | |
| • Belgium, Ireland, Malaysia, Mexico, Singapore, and Switzerland - Premium $2,500.00 each country | | | |
| | | | |
| Automobile Liability-Excess/DIC | | | |
| •Owned, hired and non-owned autos. | | Flat Charge | $7,500.00 |
| | | | |
| Automobile Physical Damage | | | |
| •Hired and non-owned autos. | | Flat Charge | $2,500.00 |
| | | CGAL Advanced Premium | $114,763.00 |
| | | | |
| Less Local Policy Premium Collected Locally | | | |
| •Taiwan | | | < $2,500.00 > |
| | | Total CGAL Advanced Premium | $112,263.00 |
| | | Minimum Earned Premium | $86,072.00 |

All other terms, conditions, and exclusions shall remain the same.

_Stephen Haske_
**AUTHORIZED REPRESENTATIVE**

Page 1 of 1

ISOP-CL 01588

## ENDORSEMENT NO. B0986

This endorsement, effective 12:01 A.M.,    August 30, 2003

Forms a part of Policy No.:    80-0264926

Issued to:    Kinetic Systems, Inc.

By:    The Insurance Company of the State of Pennsylvania

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(CONTINUED)

source material, special nuclear material, and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

waste means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (b) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility.

nuclear facility means:

(a) Any nuclear reactor;

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

property damage includes all forms of radioactive contamination of property.

All other terms, conditions, and exclusions shall remain the same.

_Stephen Blanke_

**AUTHORIZED REPRESENTATIVE**

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc.

ISOP-CL 01589